# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**, ) | |
| ) | |
| ) | Criminal Action No. 04-0230-CG |
| vs. ) | |
| ) | Civil Action No. 06-0180-CG |
| **PAUL DANIEL GARNER**, ) | |
| ) | |
| **Defendant/Petitioner.** ) | |

## ORDER

This matter is before the court on Defendant Garner's Motion to Vacate, Set Aside or Correct Sentence (Doc. 54)[1] pursuant to 28 U.S.C. §2255, the response of the Government (Doc. 64), Defendant's reply (Doc. 65), Defendant's motion for partial summary judgment (Doc. 72), the Government's response (Doc. 79), and Defendant's reply (Doc. 80). Defendant was originally proceeding pro se when the petition was filed, with assistance from another inmate. He now is represented by counsel. Defendant claims that the attorney representing him at his guilty plea and sentencing was ineffective for various reasons, that his guilty plea and the appeal waiver contained in the plea agreement were not knowingly and intelligently made due to his alleged incompetence,[2] that the government breached the plea agreement, that imposition of a

---

[1] For simplicity, the court will refer to the criminal case file in identifying documents and will refer to Mr. Garner as defendant.

[2] In his Reply, defendant clarifies that this claim is a substantive claim that he was incompetent at the time of the offense and incompetent to enter a guilty plea or to stand trial, citing Johnston v. Singletary, 162 F.3d 630 (11th Cir. 1998).

1

sentence of 121 months imprisonment violates the Eighth Amendment prohibition of cruel and unusual punishment due to his alleged incompetence, and that the waiver of appellate rights was improper in light of his incompetence.

In addition, defendant raises for the first time in his Reply (Doc. 65) three additional bases for his claim that his attorney was ineffective: 1) by failing to obtain an independent competency evaluation, b) by failing to submit preexisting medical documentation concerning his mental functioning, including medical records contained in the file of his Social Security claim, and c) by failing to file an appeal despite defendant's request that he do so.

Statement of the Case

Defendant was indicted on November 17, 2004, for conspiracy to possess with intent to distribute more than 50 grams of methamphetamine, distribution of .5 gram of methamphetamine, possession with intent to distribute 2.19 grams of methamphetamine, and possession of pseudoephedrine with the intent to manufacture methamphetamine. Pursuant to defendant's motion,[3] the court ordered a competency evaluation to be performed by the Bureau

---

[3] Defendant suffered a closed head injury in 2000, when he was beaten severely by six men. He underwent therapy for over a year. He also sought and obtained Social Security benefits on the basis of the resulting damage to his brain.
    In defendant's Motion for Mental Examination (Doc. 23), defendant's counsel identified several instances which had given him reason to question defendant's mental status, particularly his client's inability to recall significant portions of prior discussions from one interview to the next and inconsistent decisions. Counsel offered to submit, under seal, medical records from Dr. Bergman of Alabama Psychiatric Services who had diagnosed defendant in 2002 with "post traumatic brain syndrome with some residual problems in concentration, memory and executive function which was worsened by depression. Further, the closed head injury seemed to have caused him 'chronic problems with mild neural psychological deficits' and that he seems to be 'cognitively slow'." Id. at 2.

2

of Prisons. After the evaluation was completed, the court conducted a competency hearing and found that defendant was competent to stand trial.

On May 23, 3005, defendant entered into a plea agreement with the government indicating that he would plead guilty to Count One, which charged him with conspiracy to manufacture with intent to distribute more than 50 grams of methamphetamine, in violation of 21 U.S.C. §846. The sentence for a conspiracy involving more than 50 grams of a mixture containing methamphetamine was a minimum of five years and a maximum of forty years in prison. 21 U.S.C. §841(b)(1)(B)(viii). The plea agreement contained a waiver of the right to appeal or collaterally attack the sentence except to the extent that the sentence imposed constituted an upward departure from the sentencing guideline range, was in excess of the statutory maximum, or was a claim for ineffective assistance of counsel. The agreement indicated that the defendant and the government had not agreed on the amount of drugs for which the defendant would be held responsible, and that both parties would be free to argue their positions on this issue at the sentencing hearing. The government agreed to recommend a sentence at the low end of the guideline sentencing range determined by the court, and would dismiss the other counts at sentencing if the defendant maintained his plea of guilty. At the plea hearing on May 25, 2005, the court accepted defendant's guilty plea to Count One.

Prior to sentencing, defendant filed an objection to the attribution of the quantity of drugs in the presentence investigation report. The government presented witnesses at the sentencing hearing to establish the quantity of drugs for which defendant was responsible. The court found defendant responsible for 1.159 kilograms of methamphetamine and 200 grams of pseudoephedrine and established a guideline sentencing range of 121 - 151 months

imprisonment. The government recommended that the court sentence at the low end of the guideline range, as it had agreed to do in the plea agreement. The court imposed a sentence of 121 months imprisonment, followed by a 4-year term of supervised release, restitution for clean-up costs of the meth lab of $1,287.36, and a $100 special assessment.

Judgment was entered in the case on January 23, 2006. Defendant did not file a direct appeal. The instant motion was timely filed on November 27, 2006.

## Habeas Standard

Habeas relief is an extraordinary remedy which "may not do service for a [ ] [direct] appeal." U.S. v. Frady, 456 U.S. 152, 165 (1982). A defendant who has waived or exhausted his right to appeal is presumed to stand "fairly and finally convicted." Id. At 164. Unless a claim alleges a lack of jurisdiction or constitutional error, the scope of collateral attach has remained extremely limited. Addonizio v. U.S., 442 U.S. 178, 185 (1979). In general, claims not raised on direct appeal may not be considered on collateral attack. A petitioner can, however, overcome his procedural default of claims not raised on direct appeal. The burden a petitioner must meet differs, depending upon the type of claim he raises. First, "nonconstitutional claims can be raised on collateral review only when the alleged error constitutes a fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure." Burke v. U.S., 152 F.3d 1329, 1331 (11th Cir. 1998)(citations and internal quotations omitted). A petitioner's burden with regard to constitutional claims not presented on direct appeal is lightly less stringent. Constitutional claims may be considered if the petitioner can "show cause excusing his failure to raise th issues

4

previously and actual prejudice resulting from the errors." Cross v. U.S., 893 F.2d 1287, 1289 (11th Cir. 1990); see also Lynn v. U.S., 365 F.3d 1225, 1234 (11th Cir. 2004).

One way a petitioner may overcome a procedural default is by demonstrating that the default was due to constitutionally ineffective performance by counsel. Cross, 893 F2d at 1290. To establish ineffective assistance of counsel, a petitioner "must show that his attorney's performance was deficient and that the deficiency was prejudicial." Id. However, "conclusory allegations of ineffective assistance are insufficient." Wilson v. U.S. 962 F.2d 996, 998 (11th Cir. 1992)(quoting U.S. v. Lawson, 947 F. 2d 849, 853 (7th Cir. 1991)). Furthermore, "it is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance." Bolender v.Singletary, 16 F.3d 1547, 1573 (11th Cir. 1994).

> Murray [v. Carrier, 477 U.S. 478, 488 (1986)] teaches that a prisoner collaterally attacking his conviction can establish cause for a procedural default if he can show that "some objective factor external to the defense impeded counsel's efforts to comply with the . . . procedural rule," or that his attorney's performance failed to meet the Strickland standard for effective assistance of counsel. Id. At 488, 106 S. Ct. At 2645. Choosing the second option, [defendant] brought an independent Sixth Amendment claim of ineffective assistance of counsel. Because [defendant] did not pursue the first option by showing some external cause for his procedural default, the district court should have denied the first [court error] claim and focused its attention solely on the second [Sixth Amendment] claim.

Reece v. U.S., 119 F. 3d 1462, 1465 (11th Cir. 1997).

A petitioner can establish cause for a procedural default if he can show that "some objective factor external to the defense impeded counsel's efforts to comply with the . . . procedural rule," or that he received ineffective assistance of counsel with regard to that claim. Murray v. Carrier, 477 U.S. 478, 488 (1986). An attorney's performance may be found ineffective in the constitutional sense only if "counsel's conduct so undermined the proper

5

functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland v. Washington, 466 U.S. 668, 686 (1984).

> When reviewing whether an attorney is ineffective, courts should always presume strongly that counsel's performance was reasonable and adequate. . . . Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so. This burden, which is petitioner's to bear, is and is supposed to be a heavy one. And, we are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial . . . worked adequately. Therefore, the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between.

Rogers v. Zant, 13 F. 3d 384, 386 (11th Cir. 1994)(internal quotations and citations omitted).

Analysis

Competence of the Defendant

Defendant challenges his competence to execute the plea agreement, to waive his right to appeal and to seek collateral review, and to plead guilty. Competency to plead guilty or to waive the right to counsel is determined by the same standard as competency to stand trial. Godinez v. Moran, 509 U.S. 389 (1993). However, once it has been determined that a defendant was competent to plead guilty, the court must ensure that the waiver of his constitutional rights was knowing and voluntary. Id. at 400; see also U.S. v. Cash, 47 F.3d 1083, 1089 n.3 (11th Cir. 1995)(in addition to competency to waive right, court must also determine that defendant's waiver is voluntary and knowing; citing Godinez.)

There are two types of competency claims: procedural and substantive. A procedural claim involved an argument that the court should have conducted a competency hearing; this is

6

otherwise known as a Pate claim.[4]  Battle v. U.S., 419 F.3d 1292, 1298 (11th Cir. 2005).  A substantive claim involves a defendant's assertion that he was, in fact, incompetent at the time he was tried or entered his pleas.  Id.  Though defendant did not raise this issue on direct appeal, such a claim cannot be procedurally defaulted.  Id.  The matter may be raised in collateral proceedings.  Id.

> Incompetency means "suffering from a mental disease or defect rendering [defendant] mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense."  18 U.S.C. § 4241(a).[5]  "[A] petitioner raising a substantive claim of incompetency is entitled to no presumption of incompetency and must demonstrate his or her incompetency by a preponderance of the evidence."  Medina [v. Singletary], 59 F.3d [1095] at 1106 [(11th Cir 1995)](quotations and citation omitted).  To show entitlement to a hearing on his substantive incompetency claim, Battle must present "clear and convincing evidence creating a real, substantial and legitimate doubt [about] his competence to stand trial."  Id. (quotations and citation omitted).  This standard of proof is high; and "the facts must positively, unequivocally, and clearly generate the legitimate doubt."  Id. (quotations and citation omitted).  "A district court's determination that there is insufficient evidence to generate a substantial and legitimate doubt as to a petitioner's competence to stand trial is reviewed for clear error."  Id.

Battle at 1298-99.

As noted, the court has defendant evaluated prior to his plea and found him competent to stand trial.  Nonetheless, defendant asserts that there is additional evidence concerning his

---

[4] Pate v. Robinson, 383 U.S. 375 (1966). The inmate assisting defendant with filing this motion makes mention of a Pate claim; however, the court did conduct an evaluation and hearing on the issue in this case when the question of competency was first presented.  It appears that defendant is instead making a substantive claim that he was actually incompetent at the time of his plea..

[5] The test is whether defendant has (1) "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and (2) "a rational as well as factual understanding of the proceedings against him."  Dusky v. United States, 362 U.S. 402 (1960)(per curiam).

7

mental status. He states that he has medical evidence from the Social Security records concerning his successful claim for SSI benefits four years before his guilty plea, as well as evaluations and treatment records from the Bureau of Prisons while he has been incarcerated. It appears that the preexisting medical records were considered during his evaluation; the BOP report contains discussion of those records, and defense counsel referred to the records, which he apparently provided to the BOP for their use in the examination of the defendant, in his motion for psychiatric evaluation. (Doc. 23) Further, defendant has not offered any of the other medical records, most importantly the records produced during his incarceration. Nonetheless, defendant alleges that the records show an IQ in the range of 50 - 60; this is identical to the range provided by the court-ordered evaluation and does not demonstrate any basis for questioning the court's pre-trial determination of defendant's competence. Based on objective testing results, that report concluded that defendant was probably malingering, and also concluded that he was competent to stand trial. Despite that, the court did not hold that defendant suffered from no mental difficulties, merely that the problems he had did not render him incompetent to stand trial. It has been definitively established that the existence of a mental disease or defect is not sufficient, without more, to establish that a defendant is therefor incompetent to stand trial. See, e.g., Godinez, supra; Cash, supra; Battle, supra. None of the other alleged medical records which defendant claims support his substantive competency claim address that issue. Even if they had, "[w]hen a district court is faced with conflicting expert reports, it 'does not clearly err simply by crediting one opinion over another where other record evidence exists to support the conclusion.'" U.S. v. Jones, 200 Fed. Appx. 915, 920 (11th Cir 2006)(quoting Battle, at 1229).

    Defendant has not indicated that he has any evidence to demonstrate that the court's

8

determination of his competency was incorrect by any measure, let alone by "clear and convincing evidence creating a real, substantial and legitimate doubt [about] his competence to stand trial." Battle, supra. His "new" evidence consists of matters previously considered by the court and a bare allegation that newer reports confirm the IQ range the court had previously been provided. Defendant has shown no basis for revisiting this claim on collateral review.

To the extent, if any, that defendant may be understood to have also raise a Pate procedural incompetence claim, such claim is procedurally barred and, regardless, is contradicted by the record as the court did conduct a competency evaluation and hearing on his attorney's motion. Defendant's renewed competency claim is **DENIED**.

Knowing and Intelligent Waiver

Defendant's motion also arguably asserts that his guilty plea and the appeal waiver contained in the plea agreement were not knowingly and intelligently made due to his claimed incompetence.

> A finding that a defendant is competent to stand trial, however, is not all that is necessary before he may be permitted to plead guilty or waive his right to counsel. In addition to determining that a defendant who seeks to plead guilty or waive counsel is competent, a trial court must satisfy itself that the waiver of his constitutional rights is knowing and voluntary. In this sense there is a "heightened" standard for pleading guilty and for waiving the right to counsel, but it is not a heightened standard of competence.[6]

---

[6] [original footnote 12 from Godinez]
The focus of a competency inquiry is the defendant's mental capacity; the question is whether he has the ability to understand the proceedings. The purpose of the '"knowing and voluntary" inquiry, by contrast, is to determine whether the defendant actually does understand the significance and consequences of a particular decision and whether the decision is uncoerced.

Godinez v. Moran, 509 U.S. 389, 400-401 and n.12 (1993)(citation omitted).

The court conducted a full and sufficient plea colloquy with defendant prior to accepting his plea, as required by Fed.R.Crim.P. 11. During the plea colloquy, defendant was placed under oath and warned of the possibility of a perjury charge if he lied during the proceedings. Doc. 59 at 4. He reminded the court of some of the preexisting damage to his brain[7] but indicated that neither his illness nor his treatment affected his understanding of the proceedings. Id. at 6. He unequivocally stated his understanding of the charges, of the consequences of pleading guilty, and that he was doing so voluntarily.[8] Of particular note in connection with his § 2255 petition,

---

[7] Defendant referred to having had six brain tumors three years previously.

[8] Defendant affirmed that he had had the opportunity to read and discuss the plea agreement and factual resume with his attorney and that he had signed them, id at 10; that the plea agreement contained his entire understanding with the government, and that he understood the terms of the agreement, id. at 11; that there were no other promises or assurances made to him to induce him to plead guilty, id. at 12; that he understood that the terms were merely recommendations and that the court could reject them without allowing him to withdraw his guilty plea, and that the sentence imposed could be more severe than he anticipated, id.; that no one had attempted to force him to plead guilty, id.; that he was pleading guilty of his own free will because he was guilty, id. at 13; that he understood the possible results of being convicted of a drug felony, id. at 14; that he understood the maximum penalties the court could impose included a minimum sentence of 5 years and a maximum of 40 years imprisonment, plus fines of up to $2 million, a term of supervised release of 4 years, and a special assessment of $100, id. at 13-14; that his attorney had discussed the Sentencing Guidelines with him, that he understood that the advisory sentencing range could not be determined before the presentence report was produced and the parties had an opportunity to object, and that the range determined by the court may be different from any estimate his attorney or anyone else may have given him, id. at 15; that he understood that th court could depart upwards or downwards from the guideline range and that the guidelines were merely advisory, id. at 16; that he understood that there was no federal parole, id. at 16-17; that he understood that he had a limited right to appeal the sentence due to the plea waiver, and that he waived his rights to appeal on any basis except for the three reasons listed in the agreement, id. at 17; that he understood his right to trial by jury, to the presumption of innocence, to the government's burden of proof beyond a reasonable doubt, to counsel, to see and hear all the witnesses against him and have them cross-examined, to decline to testify, and to subpoenas for witnesses; and that if he pleaded guilty he will have waived all of those rights, id. at 18 - 19; that he was pleading guilty to violation of 21 U.S.C.§ 846 and that he

10

defendant acknowledged that the sentence imposed might be greater than he anticipated, that it would be at least 5 years and up to 40 years in prison, and that he could not rely on any estimates he may have received from anyone else. Based on this colloquy, the court determined that defendant's plea was knowing and voluntary. In this Circuit, courts

> apply a 'strong presumption' that statements made by a defendant during his plea colloquy are true, United States v. Medlock, 12 F.3d 185, 187 (11th Cir. 1994); therefore, "when a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false." United States v. Rogers, 848 F.2d 166, 168 (11th Cir. 1988).

U.S. v. Cardenas, 230 Fed.Appx. 933, 935 (11th Cir. 2007). Defendant has offered no sufficient argument nor identified sufficient evidence to rebut that presumption or to convince the court of any error in its determination that his plea was knowing and voluntary. Defendant's collateral challenge on the basis that his plea was not knowing and voluntary is **DENIED.**

Defendant also challenges the knowing and voluntary nature of his appeal waiver, again on the basis of his claim of incompetence. The Eleventh Circuit has addressed this issue under a very similar factual situation.

> The validity of a sentence-appeal waiver is a question of law that we review de novo. United States v. Copeland, 381 F.3d 1101, 1104 (11th Cir. 2004). We have consistently held that a sentence-appeal waiver is valid if a defendant enters into it knowingly and voluntarily. United States v. Bascomb, 451 F.3s 1292, 1294 (11th Cir. 2006)(citing cases). In order to establish that the waiver was knowing and voluntary, the government must demonstrate that either " '(1) the district court specifically questioned the defendant about the waiver during the plea colloquy, or (2) the record clearly shows that the defendant otherwise understood the full significance of the waiver.' " United States v. Grinard-Henry, 399 F. 3d 1294, 1296 (11th Cir.)(citation omitted), cert. denied, 544 U.S. 1041, 125 S. Ct. 2279, 161 L.Ed.2d 1074 (2005).
> At the plea colloquy, the district court specifically questioned Jones about the

---

understood the elements of that offense, id. at 19; and that his signature on the factual resume indicated that he agreed that the government could prove the facts stated therein, id. at 21.

> sentence-appeal waiver, explained the limited exceptions in which he could potentially appeal his sentence, and asked for confirmation that he understood the waiver. Jones indicated that he fully understood the waiver and had discussed it with counsel. The district court made an explicit finding that Jones knowingly and intelligently waived his appellate rights. The waiver's plain language also included a confirmation that Jones had discussed the matter with his counsel. Furthermore, based on our conclusion that the district court did not err in its competency determination, Jones cannot argue that he was incompetent to waive his right to appeal.

U.S. v. Jones, 200 Fed.Appx. 915, 921022 (11th Cir. 2006).

Jones involved a direct appeal of his sentence, and was thus decided under a more generous standard than is available on collateral attack. Even under that standard, the court found no basis to defendant's challenge to the knowing and voluntary nature of his execution of the appeal waiver. This court's colloquy with defendant Garner, and his sworn answers, addressed the same issues as set forth in Jones and established a similar level of understanding despite the claims of both defendants that they were incompetent. The Eleventh Circuit's reasoning leads inevitably to the same ruling in this case. Defendant's claim that his waiver of appellate rights was not knowing and voluntary or was otherwise improper due to his incompetence is **DENIED.**


Breach of Plea Agreement

Defendant claims that the government breached the plea agreement by claiming additional evidence in the presentence report, and being prepared to offer that evidence at sentencing, concerning the amount of drugs for which defendant was responsible. Defendant relies on the government's promise to recommend a sentence at the low end of the applicable guideline range. The range is determined by the court based, in part, on the amount of drugs for

12

which the court finds defendant responsible. Once the advisory range was determined under the guidelines, the government did, in fact, recommend that defendant be sentenced at the low end. In light of the express terms of the plea agreement, including particularly the provision that the parties had no agreement on the amount of drugs and that defendant and the government could address the matter at sentencing, this claim has no merit. In addition, it appears to be procedurally barred and to be subject to the limited waiver of the right to collaterally attack the sentence. Defendant's claim concerning breach of the plea agreement is **DENIED**.

Sentence constitutes cruel and unusual punishment

Defendant also claims that his conviction, sentence and detention violate the Eighth Amendment prohibition against cruel and unusual punishment. He argues in support of this claim that the court should not have accepted his plea and imposed "a particularly severe sentence" when he did not understand the consequences of his plea. As the court held at the competency hearing and again at the plea hearing, and as discussed above, defendant was competent to stand trial, to plead guilty, and to waive his appellate rights, and his decisions with regard to his plea and appeal waiver were knowingly and voluntarily made. The foundation for the instant claim thus lacks merit. In addition, the claim is procedurally defaulted and is subject to the collateral review waiver contained in his plea agreement. Defendant's Eighth Amendment claim is **DENIED**.

Ineffective Assistance of Counsel

Defendant claims that his attorney was ineffective in violation of his Sixth Amendment

13

rights because 1) counsel failed to raise the issue of his mental impairment, 2) counsel assured defendant and his mother that he would only receive a sentence of 10 to 12 months imprisonment, 3) counsel failed to object to the introduction of testimony at sentencing concerning the amount of drugs for which defendant was responsible, and 4) counsel failed to object to the government's alleged breach of the plea agreement.

Three of these claims merit little discussion. Defendant's counsel did raise the issue of defendant's mental impairment appropriately in the criminal proceedings, seeking and obtaining a court-ordered evaluation and a ruling on competency, and by providing defendant's prior medical records to the mental health examiners. Because the court was aware of defendant's mental difficulties and had found defendant to be competent to stand trial, and particularly because the evaluators found that defendant was malingering - exaggerating his symptoms to obtain more favorable treatment from the court in the criminal prosecution - reasonably effective counsel could certainly have found it best not to raise the issue of defendant's mental limitations in connection with every issue that arose, diluting whatever positive effect it might have when needed. In addition, defense counsel did in fact raise the issue of defendant's mental deficiencies in his sentencing memorandum filed with the court (Doc. 39), arguing that the court should consider those deficiencies in determining what role the defendant played in the conspiracy and in evaluating the testimony of those co-conspirators who placed defendant in a leadership role. (Doc. 39 at 4-5). That claim is without merit.

Nor was counsel ineffective for failing to object to introduction of drug quantity evidence at sentencing because the introduction of that evidence was not a breach of the plea agreement. As discussed above, the defendant misconstrues the provision of the plea agreement that required

14

the government to recommend a sentence at the low end of the guideline range, and ignores the specific provision of the agreement that the parties were free to present at sentencing their positions on the amount of drugs for which defendant was responsible. This claim is also without merit.

Defendant asserts, with the support of an affidavit from his mother[9] (Doc. 66), that his attorney told him and his mother that if he pled guilty he would receive a sentence of approximately 12 months or less. Instead, defendant was sentenced to just over ten years in prison. For present purposes[10], the court will assume that defendant could prove this allegation. Nonetheless, his reliance on such an estimate in the face of specific warnings from the court to the contrary is not reasonable, and his assertion that he did not understand that any estimates his attorney may have made were not binding on the court are not credible in the face of his statement, under oath, to the contrary. Thus, even if the court assumes that he can demonstrate that his attorney's representation was deficient, he can not demonstrate the prejudice prong of his claim to have received ineffective assistance of counsel. For the foregoing reasons, all four of defendant's properly raised bases for his claim of ineffective assistance of counsel are **DENIED**.

---

[9] The document presented is signed by numerous other people in addition to defendant's mother, but states that the only other person who heard the conversation on speaker phone has since died. It appears that, rather than representing that the other signatories heard the conversation, they may have signed simply to demonstrate their support or belief in the contents of the affidavit. Regardless of the nature of these other signatures, while determining whether an evidentiary hearing is warranted, the court credits the specific factual allegations by the defendant and assumes, for purposes of this order, that defendant's counsel made such a representation.

[10] The court does not make a factual determination on this issue, as it finds an evidentiary hearing is not necessary on this claim.

Additional Grounds

In his Reply (Doc.65), defendant attempts to raise three other bases for his claim that his attorney provided him with ineffective assistance: a) by failing to obtain an independent competency evaluation, b) by failing to submit preexisting medical documentation concerning his mental functioning, including the medical records contained in the file of his Social Security claim, and c) by failing to file an appeal despite defendant's request that he do so. With regard to this last issue, defendant asks the court to grant him an out-of-time appeal so that he can challenge the court's finding that he was competent to stand trial.

The Reply was dated March 5, 2007, and was filed with the court on March 7, 2007. Judgment was entered on defendant's conviction on January 23, 2006. Since he did not file an appeal, his conviction became final when the time ran for filing a notice of appeal, pursuant to Fed.R.App.P. 4(b)(1) in effect at the time[11], the deadline was ten days from the date of the judgment. Defendant's Reply, raising additional grounds for relief, thus was not filed within one year of the date on which his conviction and sentence became final[12], and unless it relates back to the original filing[13], was untimely in adding additional grounds.

---

[11] The current version of Fed.R.App.P. 4(b)(1) allows notice of appeal to be filed within 14 days of entry of judgment.

[12] Defendant argues, through counsel in his reply (Doc. 80) to the government's response (Doc. 79) to his motion for partial summary judgment (Doc. 72), that the amended grounds were raised in a timely fashion because they were filed within the 90-day period he would have had to petition for certiorari if his counsel had filed an appeal as he was allegedly instructed to do. No case law was cited in support of this proposition, and the court has not found any case law which would support that argument. Because no appeal was filed, his conviction became final when the time for filing a notice of appeal expired. Ramirez v. U.S., 146 Fed.Appx. 325 (11th Cir. 2005).

[13] See Fed.R.Civ.P. 15(c). In addition, defendant did not file a motion to amend. The version of Fed.R.Civ.P. 15 then in effect required leave of court to file an amendment to the

> If a prisoner amends his § 2255 motion after the statute of limitations expires, the new claims are untimely unless they relate back under Rule 15(c) to one of the claims in the original motion. [U.S. v.] Davenport, 217 F.3d at 1344 [(11th Cir. 2000)]. " 'Relation back' causes an otherwise untimely claim to be considered timely by treating it as if it had been filed when the timely claims were filed." Id. A pleading relates back to the original pleading when the pleading asserts a claim "that arose out of the conduct, transaction, or occurrence set out-or attempted to be set out-in the original pleading." FED.R.CIV.P. 15(c)(1)(b).
>
> For a claim to relate back in a § 2255 proceeding, "the untimely claim must have more in common with the timely filed claim than the mere fact that they arose out of the same trial and sentencing proceedings." Davenport, 217 F.3d at 1344. "Instead, in order to relate back, the untimely claim must have arisen from the same set of facts as the timely filed claim, not from separate conduct or a separate occurrence in both time and type." Id. (quotation marks and citations omitted). "So long as the original and amended petitions state claims that are tied to a common core of operative facts, relation back will be in order." Mayle v. Felix, 545 U.S. 644, 664, 125 S.Ct. 2562, 2574, 162 L.Ed.2d 582 (2005). An amendment that serves to expand facts or cure deficiencies in an original claim relates back to the original claim. Dean v. United States, 278 F.3d 1218, 1223 (11th Cir.2002) (per curiam).

United States v. Mabry, 336 Fed.Appx. 961, 963 (11th Cir. 2009).

In Mabry, the Eleventh Circuit found that where the petitioner's timely claim addressed ineffective assistance of counsel in sentencing and his new claim addressed ineffective assistance of counsel in an aspect of plea negotiations, the new claim did not relate back under the Davenport test because they did not arise from the same conduct or occurrence in both time and type. Likewise, in Espinosa v. United States, 330 Fed.Appx. 889 (11th Cir. 2009), the Court of Appeals held that pretrial ineffective assistance of counsel claims raised in petitioner's supplemental memorandum did not relate back to his original motion to vacate which alleged ineffective assistance claims during trial and sentencing.

---

petition after a responsive pleading had been filed. The amended version of Rule 15 allows amending once as a matter of course. Fed.R.Civ.P. 15(a)(1).

In this case, two of the three supplemental claims raised in the Reply[14] arguably relate back to the claim made in the original petition concerning the alleged failure of counsel to raise the issue of mental impairment. There is no indication in defendant's filings that a separate mental evaluation, if obtained by the defendant, would have produced an opinion any different from that produced by the Bureau of Prisons. Indeed, the BOP evaluation provided to the court substantiated the same IQ as now claimed by the defendant and further described that testing produced a score suggestive of "severe impairment" due to damage or disease. (See defense counsel's sentencing memorandum, describing portions of the BOP report, Doc. 39 at p. 4). Also, defendant's claim that previous medical records were not obtained and submitted by defense counsel is contradicted by the record in this case. Accordingly, those two supplemental claims, to the extent they relate back to the original claim of ineffective assistance of counsel, are **DENIED.**

The third claim, that defense counsel was ineffective for failing to file a notice of appeal after having been requested to do so, is clearly time-barred, as it does not relate to the previous claim of ineffective assistance of counsel concerning mental competency in that it did not arise from the same conduct or occurrence in both time and type.

Conclusion

For the reasons stated above, it is hereby **ORDERED** that defendant's Motion to Vacate,

---

[14] The claims which arguably relate back are 1) that counsel failed to obtain an independent competency evaluation and 2) that counsel failed to submit preexisting medical documentation concerning defendant's mental functioning.

18

Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 (Doc. 54), and defendant' Motion for Partial Summary Judgment (Doc. 72) are **DENIED**.

    **DONE** and **ORDERED** this 20th day of April, 2010.

                                                  /s/ Callie V. S. Granade
                                                UNITED STATES DISTRICT JUDGE